THE WILL COUNTY BOARD, Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District    No. 3—99—0765

Opinion filed February 28, 2001.

Charles F. Helsten and Richard S. Porter (argued), both of Hinshaw & Culbertson, of Rockford, for petitioner.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Elizabeth Schenkier (argued), Assistant Attorney General, of counsel), for respondent Pollution Control Board.

Donald J. Moran, of Pedersen & Houpt, of Chicago, for respondent Waste Management of Illinois, Inc.

JUSTICE LYTTON delivered the opinion of the Court:

Will County and Waste Management of Illinois, Inc. (WMI), entered into a contract to develop a sanitary landfill (Prairie View) on county land. WMI filed a request for site location approval (application) with the Will County board (board) for Prairie View. The board approved the application subject to several conditions. WMI then filed a petition with the Illinois Pollution Control Board (PCB) for review of condition six, which required that WMI close its Wheatland landfill by April 1, 2001, or by the opening of Prairie View, whichever would be later. The PCB found that the board's addition of condition six was against the manifest weight of the evidence; the board seeks judicial review. We affirm the PCB's decision.

## FACTS

In 1996, Will County drafted a solid waste management plan and subsequent update (together, the plan) that provided for a private contractor to develop a sanitary landfill on county land to serve the needs of Will County. WMI was awarded the contract and filed an application for Prairie View with the board. During public hearings on the matter, voluminous documentation was presented and extensive testimony was taken. Sheryl Smith, an expert witness for WMI, testified in detail regarding the need for the landfill and its consistency with the county's plan.

The board approved WMI's application but added several conditions, including condition six, which required WMI's present operations at its Wheatland landfill to cease by either April 1, 2001, its anticipated closure date, or the date Prairie View began to accept waste, whichever would be later. WMI filed a petition with the PCB for review of condition six, claiming in part that it was against the manifest weight of the evidence. The PCB held a hearing, reviewed the parties' written arguments, and took public comments regarding the petition. With one member dissenting, the PCB then issued an order finding that the addition of condition six was against the manifest weight of the evidence. The board now seeks judicial review of the PCB's decision to strike condition six.

## DISCUSSION

The board contends that the PCB erred in striking condition six because it is reasonable and necessary to satisfy two criteria in section 39.2(a) of the Illinois Environmental Protection Act (Act) (415 ILCS 5/39.2(a) (West 1998)).

■ When reviewing the board's decision on a siting location application, this court must determine whether it is against the manifest weight of the evidence. A decision is against the manifest weight of the evidence if the opposite result is clearly evident or indisputable. *Fairview Area Citizens Taskforce v. Pollution Control Board*, 198 Ill. App. 3d 541, 550, 555 N.E.2d 1178, 1184 (1990). The board may only impose conditions that are reasonable and necessary to meet the waste needs of the area. 415 ILCS 5/39.2 (West 1998).

I

■ The board first argues that condition six is needed to satisfy criterion (i) of the Act, which requires a showing that the new facility "is necessary to accommodate the waste needs of the area it is intended to serve." 415 ILCS 5/39.2(a)(i) (West 1998). The board contends that if Wheatland is permitted to remain open after Prairie View is operational, the new facility was not necessary to accommodate the county's disposal needs since Wheatland remained available.

The board relies on *Waste Management of Illinois, Inc. v. Pollution Control Board*, 123 Ill. App. 3d 1075, 1083-84, 463 N.E.2d 969, 976 (1984), in which the court found that WMI failed to establish sufficient need for a new landfill to satisfy criterion (i). The evidence in that case showed that the existing landfills would be able to meet the area's disposal needs for at least 10 more years.

■ In the instant case, the plan estimates that, with a recycling rate of 25%, the Will County area will require annual disposal capacity for 700,000 tons of waste from 1996 to 2020. However, the area's only two existing landfills, CDT and Wheatland, were projected to close in November 1998 and April 2001, respectively, and the plan did not recommend transporting waste out of the county for disposal. To handle the service area's anticipated disposal needs, the plan recommended developing a landfill in conjunction with a private contractor "as available disposal capacity in the County diminishes."

Based on her projection that Wheatland would reach capacity by April 2001, WMI's expert witness, Sheryl Smith, concluded that Prairie View must be built to meet the county's projected waste disposal needs. However, this conclusion was not dependent on the closure of Wheatland at that time. Under Smith's analysis, even with the addition of Prairie View, the service area would suffer a shortfall of capacity of approximately 4.2 million to 10.6 million tons during the planning period. If Prairie View was not available for use, the shortfall would increase by an additional 20 million tons.

A report prepared by the Will County waste services department director Dean Olson (Olson report) supports Smith's conclusions. It

summarized Smith's testimony and a report prepared by her and concluded that "the County feels that Criterion [i] has been satisfied."

In its decision, the PCB relied heavily on the projected shortfall in disposal capacity even if both Wheatland and Prairie View were filled to maximum capacity to conclude that condition six was not reasonable and necessary to satisfy criterion (i) of the Act. We agree with this analysis. The record shows that the service area's disposal needs cannot be met over the planning period without the addition of Prairie View; the board's decision to impose condition six to satisfy criterion (i) is against the manifest weight of the evidence.

## II

■ The board next asserts that condition six is necessary to satisfy criterion (viii) of section 39.2(a) of the Act, which requires that the proposed facility be consistent with the county's plan. See 415 ILCS 5/39.2(a)(viii) (West 1998). The board claims that because the county "plans to ultimately have only one landfill operating within its borders," Wheatland must close when Prairie View becomes operational.

■ The plan does not explicitly limit the number of operating landfills in the county at any given time or specifically require all interim disposal facilities to close when Prairie View opens. In fact, the plan permits the subsequent expansion of existing facilities and siting of additional ones "if it can be demonstrated that the nine criteria defined under [the Act] have been met."

The plan's references to "a" or "the" landfill reflect the county's intention to focus first on the development of a single new landfill, not several different sites or a series of facilities. Although the plan's ultimate goal of having only one operating landfill is reasonable, Wheatland cannot fill that role; it cannot continue to accept waste for the 20 years envisioned by the plan. As of January 1998, it had an estimated capacity of only 2.5 million tons, while the county's anticipated output was 975,000 tons in 2000. There is no evidence that Wheatland will be able to accept waste significantly beyond its anticipated closure date in April 2001. Under these circumstances, it is inevitable that Wheatland will reach capacity and close at some point in the near future, making Prairie View the county's only operating landfill. The temporary operation of two landfills is not inconsistent with the plan.

Moreover, even the Olson report found the development of Prairie View to be consistent with the plan without the addition of condition six. The report relied on Smith's testimony and reports, which were unrebutted concerning criterion (viii), and noted that no other witness

offered an opinion concerning the satisfaction of this criterion. The Olson report also suggested the addition of 52 special conditions to the approval of the landfill application, but none of these required the closure of Wheatland. Under these circumstances, the PCB's finding that condition six is not reasonable and necessary to satisfy criterion (viii) of section 39.2(a) of the Act (415 ILCS 5/39.2(a)(viii) (West 1998)) is not against the manifest weight of the evidence.

## CONCLUSION

Since we affirm the PCB's decision for the reasons stated above, we need not address the issue of whether condition six is inconsistent with the PCB's regulations and constitutes a confiscatory taking.

For the reasons stated, we affirm the decision of the Illinois Pollution Control Board.

Affirmed.

BRESLIN and SLATER, JJ., concur.